J-A11025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: I.J.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.M.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 15 MDA 2017 |

Appeal from the Order Entered December 1, 2016
In the Court of Common Pleas of Juniata County
Orphans' Court at No(s): 0009-Adopt-2015-IJK

| | | |
|---|---|---|
| IN RE: I.D.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.M.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 16 MDA 2017 |

Appeal from the Order Entered December 1, 2016
In the Court of Common Pleas of Juniata County
Orphans' Court at No(s): 0010-ADOPT-2015

BEFORE: SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY MOULTON, J.: **FILED DECEMBER 20, 2017**

D.M.K. ("Mother") appeals from the December 1, 2016 orders

involuntarily terminating her parental rights to I.D.M. (born in June 2012)

---

* Former Justice specially assigned to the Superior Court.

and I.J.K. (born in May 2014) (collectively "Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] We affirm.

Juniata County Children and Youth Services Agency ("the Agency") first became involved with Mother in 2012 after the Agency received referrals about Mother's heroin use while I.D.M. was in her care. The Agency developed a family service plan ("FSP") for Mother to meet the basic needs of I.D.M. and to remain drug and alcohol free.

When Mother gave birth to I.J.K., the Agency received a referral that she tested positive for both heroin and marijuana. Mother admitted that she used heroin and marijuana within a week or two of giving birth to I.J.K. Following this incident, the Agency filed a shelter care application as to I.J.K. At the shelter care hearing on May 14, 2014, the trial court entered an order, authorizing the Agency to place her into foster care. On May 22, 2014, the trial court adjudicated I.J.K. dependent, and placed her into the home of foster parents, R.C. and K.C, where she currently resides.

As for I.D.M., the Agency placed her into the custody of Father-1. The Agency developed a court-approved safety plan for Father-1, directing him

---

[1] Children have different biological fathers. The putative father of I.D.M. is H.R.M., Jr. ("Father-1"), who is deceased. The putative father of I.J.K. is N.T.C. ("Father-2"). Father-2 did not attend the termination hearings. In a separate order entered on December 1, 2016, the trial court involuntarily terminated the parental rights of Father-2 to I.J.K. Father-2 is not a party to the current appeal, nor did he file a separate appeal. Father-2, however, filed a brief in support of Mother on March 20, 2017.

to provide proper care to I.D.M. and to ensure I.D.M. has no unsupervised contact with Mother. On May 20, 2014, the Agency received a report that Father-1 left I.D.M. in Mother's care unsupervised. The Agency received a subsequent report on September 10, 2014, that I.D.M. was in Mother's care unsupervised when the police arrested her in a McDonald's parking lot for using drugs on the premises and charged her with endangering the welfare of a child, corruption of minors, intentional possession of a controlled substance, possession of drug paraphernalia, driving under the influence ("DUI"), and driving while her license was suspended. Due to Father-1's disregard for the safety plan, the Agency filed a shelter care application as to I.D.M. Following a shelter care hearing on September 11, 2014, the trial court entered an order placing I.D.M. into foster care. On September 18, 2014, I.D.M. was adjudicated dependent. Thereafter, I.D.M. was placed in several different foster care placements until September 2015, when she was placed in the same foster home as I.J.K., where she currently resides.

From 2014 to 2016, the trial court held several permanency review hearings. Mother's FSPs and permanency plans for Children were continuously revised, but her main FSP and permanency goals were: (1) to remain drug free; (2) to refrain from any drug use aside from the medication prescribed at drug treatment facility; (3) to complete a drug and alcohol evaluation; (4) to attend an impatient drug rehabilitation and treatment program; (5) to attend at least two Narcotics Anonymous meetings weekly;

(6) to attend weekly drug and alcohol counseling at Clear Concepts; (7) to maintain proper and stable living arrangements; (8) to attend supervised visits with Children; (9) to cooperate with all probation regulations and not receive any additional criminal charges; and (10) to contact the Agency if she moved.

On August 11, 2015, the Agency filed petitions to involuntarily terminate Mother's parental rights to Children and to change their permanency goal to adoption. On October 7, 2016 and October 13, 2016, the trial court held hearings on the petitions. At the hearings, DHS presented the testimony from law enforcement officers, Trooper Christopher Wilson, Corporal Andrew Verbos, and Officer Jonathan Marsh; probation officers at Juniata County Probation, Jeremy Kensinger and Abigail Krepps; the Agency's caseworker, Jeffrey Moore; foster care specialist at Bair Foundation, Tina Langel; and psychologist, David G. Ray, M.Ed. Mother, represented by counsel, testified on her own behalf and presented the testimony of maternal great aunt, C.J.R.; C.J.R.'s fiancé, W.P.H.; maternal cousin, C.W.; and maternal half-sister, M.R.O.

On December 1, 2016, the trial court entered separate orders terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b), and changing Children's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351. On December 29, 2016, Mother filed timely notices of appeal and concise statements of errors complained of

on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 18, 2017, this Court consolidated Mother's appeals *sua sponte*. In her brief on appeal, Mother raises the following issues:

1. [The Agency] failed to prove by clear and convincing evidence that involuntary termination of Mother's parental rights would serve the emotional needs and welfare of the child.

2. The trial court committed an error of law by involuntarily terminating Mother's parental rights without fully considering the impact of termination on the emotional needs and welfare of the child.

3. The trial court committed an error of law by failing to consider evidence that was relevant to the crucial question of whether the child's emotional needs and welfare would be served by involuntary termination of Mother's parental rights.

Mother's Brief at 7.[2]

In response to Mother's Rule 1925(b) statement, the trial court filed a four-page opinion pursuant to Rule 1925(a) on January 27, 2017. On June 29, 2017, this Court entered an order, remanding this matter to the trial court for a more thorough Rule 1925(a) opinion. On July 17, 2017, the trial court filed a Rule 1925(a) opinion pursuant to our June 29, 2016 order.

We apply the following standard when reviewing an order terminating a parent's parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of

---

[2] Mother did not challenge the trial court's orders changing the permanency goal for the Children to adoption.

fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted) (alteration in original).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, controls the termination of parental rights, and requires a bifurcated analysis, as follows:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is "so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998)).

We first address Mother's challenge to the trial court's termination of her parental rights under section 2511(a). In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), which provide:

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing

- 7 -

of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8). This Court has held that we need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), to affirm an order terminating parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004).

In her challenge to her termination under section (a), Mother does not challenge the trial court findings under sections 2511(a)(1), (2), or (5). Mother challenges only the trial court's finding that termination was proper under section 2511(a)(8), arguing that CYS failed to prove, by clear and convincing evidence, that termination would meet the needs and welfare of Children.

Because sections 2511(a)(1) and (2) do not require a determination as to whether termination would serve the needs and welfare of Children, Mother has waived any challenge to termination under those sections. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and statement of questions involved in his brief on appeal). In addition, because Mother has waived any challenge to sections 2511(a)(1) and (a)(2), we affirm the trial court's finding that termination was proper under section 2511(a). *See In re B.L.W.*, 843 A.2d at 384 (this Court need only agree with any one subsection of section (a) to affirm termination).[3]

_____

[3] Further, the record supports the trial court's finding that termination of Mother's parental rights would best serve the Children's needs and welfare. Mr. Ray, a psychologist, testified that he conducted a psychological evaluation of Mother and interviewed her on three separate occasions. N.T., 10/13/16, at 93-94. Mr. Ray testified that Mother's psychological evaluation revealed that she is "a self-centered individual who takes little responsibility
*(Footnote Continued Next Page)*

We must now determine whether the requirements of section 2511(b) are satisfied. *Id.* at 1009. This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

Under section 2511(b), we inquire whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa.Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287. The trial "court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

The mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing,

_____
(Footnote Continued)

for her actions, and more importantly, how those actions and behaviors affect her current situation[.]" *Id.* at 107. Mr. Ray stated that Mother has a victim mentality and claims others, such as the Agency, are unfair to her. *Id.* at 132. Mother was forthcoming about her criminal history and drug and alcohol problem, but Mr. Ray found her less amenable to change her behavior in the future because she was unable to take responsibility for her behavior. *Id.* at 133. Mr. Ray further noted that Mother never expressed a desire to turn her life around in order to be reunified with Children. *Id.* at 99-100.

necessary and beneficial relationship." ***In re Adoption of T.B.B.***, 835 A.2d 387, 397 (Pa.Super. 2003).

Mother argues that the trial court failed to properly consider the needs and welfare of Children. Mother's Br. at 12-13. Mother further claims that the trial court failed to consider Mother's bond with Children, which she maintained by her weekly visits, and how severing her bond with them would cause "upheaval." ***Id.*** at 11-13.

The trial court determined that Mother does not have a bond with I.J.K. since she was removed from her care at birth. Final Memorandum, 7/17/17, at 17. The trial court, thus, concluded that termination of Mother's parental rights will not adversely affect I.J.K. ***Id.*** The trial court also found that, while Mother does have some type of bond with I.D.M., termination of her parental rights will not adversely affect the welfare of I.D.M. as she will be with her sister in the care and love of their prospective adoptive parents. ***Id.*** The trial court found that a loving and caring relationship exists between the Children and their prospective adoptive parents. ***Id.*** The trial court concluded that the Children's emotional needs and welfare will best be met by the termination of Mother's parental rights. ***Id.*** at 19.

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. ***See In re Adoption of S.P.***, 47 A.3d at 826-27. Mr. Ray testified that he assessed Mother's

bond with Children and observed her interaction with them. N.T., 10/13/17 at 109. Mr. Ray testified that Mother has been absent significant portions of Children's life, which has interfered with her ability to connect with Children. *Id.* at 112. He noted that Mother's visits with Children were appropriate, but lacked affection. *Id.* at 113, 130. Mr. Ray specifically testified that Children were friendly toward Mother, but they didn't display a lot of spontaneous affection such as jumping into her arms, sitting on her lap, or hugging her. *Id.* at 113. Mr. Ray also assessed Children's bond with foster parents, finding both Children were very affectionate to both parents, sitting on their laps and giving them hugs. *Id.* at 114.

Mr. Ray noted that I.J.K. has been in placement basically her entire life. *Id.* at 114. Mr. Ray opined that I.J.K. and Mother do not have a healthy attachment. *Id.* at 114-15. Mr. Ray testified that I.J.K.'s foster parents are the child's psychological parents and have been since the child was placed in their care shortly after she was born. *Id.* at 129. Mr. Ray opined that terminating Mother's parental rights with I.J.K. would have no effect on her. *Id.* at 116.

Mr. Ray noted that I.D.M. has been moved from parent to parent, various relatives, and foster care placements. *Id.* at 111-12. Mr. Ray testified that I.D.M. and Mother have a relationship, but their relationship is not healthy or secure due to Mother's failure to properly parent I.D.M. *Id.* at 117. Mr. Ray opined that I.D.M. has been out of Mother's care for such

an extended period that she does not view Mother as a parental figure. *Id.* at 118. Mr. Ray expressed his concern about I.D.M.'s various placements throughout her life, stating I.D.M. needs a warm, structured, stable, consistent environment where she can emotionally develop. *Id.* Mr. Ray testified that terminating Mother's parental rights will allow I.D.M. to live with I.J.K. and to have active functioning parents. *Id.* at 119. Mr. Ray stated that, while I.D.M. may face some upheaval and need some short-term counseling if the court terminated Mother's parental rights, such upheaval is outweighed by the stability and emotional gains of living with her prospective adoptive parents and I.J.K. *Id.* at 118-119. Mr. Ray ultimately recommended that the court terminate Mother's parental rights to the Children. *Id.* at 119.

Based on the foregoing testimonial evidence and the totality of the record evidence, we discern no abuse of discretion or legal error by the trial court in concluding that no bond exists such that the Children would suffer permanent emotional harm if Mother's parental rights were terminated. *See In re K.Z.S.*, 946 A.2d 753, 763-64 (Pa.Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would have been contrary to the child's best interests, and any bond with the mother would have been fairly attenuated when the child was separated from her, almost constantly, for four years).

Accordingly, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2017